UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY A. BIVENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:11-cv-01310-TWP-DKL |
| MICHAEL J. ASTRUE Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Mary A. Bivens ("Ms. Bivens") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") under Title XVI of the Act.[1] For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I.     BACKGROUND

**A.     Procedural History**

On June 1, 2006, Ms. Bivens filed applications for DIB and SSI, alleging a disability onset date of April 30, 2004. Ms. Bivens's applications were denied initially on September 6, 2006, and upon reconsideration on December 7, 2006. Thereafter, Ms. Bivens filed a request for a hearing, and a video hearing was held before Administrative Law Judge Deborah A. Arnold (the "ALJ") on April 29, 2009. Ms. Bivens was represented by attorney Kenneth P. Schuck at the hearing. On August 26, 2009, the ALJ denied Ms. Bivens's applications. On July 29, 2011,

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

the Appeals Council denied Ms. Bivens's request for review of the ALJ's decision, thus making it the final decision of the Commissioner for purposes of judicial review.  Ms. Bivens filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.    Factual Background**

At the time of the ALJ's decision, Ms. Bivens was 49 years old and had undergraduate and master's degrees, as well as a Ph.D. in Social Sciences and Education and a nursing degree. Prior to the alleged onset date of her disability, she had past relevant work as a college faculty member at a prison, a general office clerk, and a general duty nurse.  She also worked as a hospice nurse and a funeral home grief counselor in 2004 and 2005; however, the ALJ found that, due to the limited duration of these positions, these jobs that Ms. Bivens performed after her alleged onset date were unsuccessful work attempts.  Ms. Bivens alleges that she has the following impairments: migraine headaches, degenerative disc disease, obesity, post-traumatic stress disorder ("PTSD"), sleep apnea, Von Willenbrand's[2] disease, idiopathic iron deficiency anemia, carpal tunnel syndrome, wrist nodules and knee problems.

In June and July of 2003, Ms. Bivens was seen by Dr. Jean Miller ("Dr. Miller"), a physician at Hematology-Oncology of Indiana, for iron deficiency anemia, which caused prolonged fatigue.  Dr. Miller found that Ms. Bivens had very low iron saturation levels and modest iron absorption, and noted that records of blood tests going back three years were consistent with a diagnosis of iron deficiency anemia.  Dr. Miller also performed a bone marrow aspiration and biopsy and diagnosed Ms. Bivens with a mild form of Von Willebrand's disease. In September 2003, Ms. Bivens was hospitalized for intravenous iron infusions to treat her anemia.  Ms. Bivens was hospitalized overnight for a total of six intravenous iron infusions

---

[2] Von Willebrand Disease is a genetic condition which inhibits the body's blood-clotting process.  *See Von Willebrand Disease*, NAT'L HEMOPHILIA FOUND., http://www.hemophilia.org/NHFWeb/MainPgs/MainNHF aspx? menuid=182&contentid=47 (last visited March 5, 2013).

during the relevant time period, including June 2004, July 2004, June 2005, April 2006, July 2006, and September 2008.

Ms. Bivens has been seen by her primary care physician, Dr. Robert Hunter ("Dr. Hunter"), for a variety of medical problems, including depression with PTSD, migraine and vascular headaches, sleep problems, joint pain, hypertension, hernia, allergies, and iron deficiency anemia. In July 2003, Ms. Bivens reported to Dr. Hunter that she was having knee pain, and was later referred to Dr. Scott Walker ("Dr. Walker"), an orthopedic physician, and underwent surgery to repair a torn meniscus in her knee. In November 2003, Dr. Hunter performed a comprehensive medical examination on Ms. Bivens, at which Dr. Hunter noted that she had hand and foot pain, was receiving IV treatments for her anemia, and that her energy levels were up and down. At the time, she was also still on crutches from her meniscus repair surgery. Dr. Hunter diagnosed Ms. Bivens with Von Willenbrand's disease, iron deficiency anemia, recent right medial meniscus surgery repair of the right knee, recurrent migraine headaches, depression, gastroesophageal reflux disease, and a family history of coronary artery disease. In December 2005, Dr. Hunter performed another comprehensive physical exam, which was generally normal. In September 2006, Ms. Bivens reported to Dr. Hunter that she was experiencing depression and fatigue, and about a month later she reported a history of sexual abuse, which caused her to have nightmares and flashbacks. She reported that she was sleeping poorly secondary to the dreams and that she had become forgetful.

In May 2006, Ms. Bivens was referred by Dr. Hunter to psychologist Dr. Ellen Lucas[3] ("Dr. Lucus") for counseling. Dr. Lucas began treating Ms. Bivens for PTSD and flashbacks, depression, familial relationship issues, and her history of abuse. Dr. Lucas also worked with Ms. Bivens on discerning the root cause of her migraine headaches and dealing with

---

[3] Dr. Lucas is also referred to as Dr. Mauer in the record.

remembering previously forgotten past sexual abuse, and noted that Ms. Bivens was reading and completing exercises in a self-help book. In conjunction with her therapy, Dr. Hunter prescribed Ms. Bivens medication to assist with her sleep and anxiety issues. Dr. Lucas saw Ms. Bivens through the end of 2006.

Ms. Bivens was evaluated by state consultative examiner, Dr. Ceola Berry ("Dr. Berry"), on July 18, 2006. Ms. Bivens reported that she was diagnosed with PTSD in 2006 as the result of recalling past sexual and physical abuse, and that she was taking Lexapro. Ms. Bivens reported that she was able to perform activities of daily living, including dressing, bathing, grooming, cooking, cleaning, laundry, and shopping, and that she enjoyed watching television. She also reported to Dr. Berry that she was currently engaged in a job search. Dr. Berry noted that Ms. Bivens's mood was euthymic with stable affective expression, and that she self-reported anxiety and depression, intermittent weepiness, easy annoyance, loss of sexual desire, and non-restorative sleep. Dr. Berry diagnosed Ms. Bivens with a mood disorder due to thrombocytopenic purpura with depressive features, and assigned her a Global Assessment of Functioning ("GAF") of 72. Additional facts will be addressed below as necessary.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly

pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. Bivens met the insured status requirement of the Act for DIB through March 31, 2010. At step one, the ALJ found that Ms. Bivens had not engaged in substantial gainful activity since April 30, 2004, and that her work subsequent to this date constituted unsuccessful work attempts. At step two, the ALJ found that Ms. Bivens had the following severe impairments: degenerative joint disease, obesity, intermittent anemia, and post traumatic stress disorder. The ALJ also found that Ms. Bivens had the following non-severe impairments: sleep apnea, asthma, Von Willebrand's disease, carpal tunnel syndrome, and a hernia. At step three, the ALJ found that Ms. Bivens does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Bivens had the residual functional capacity to perform a reduced range of sedentary work, including lifting ten pounds occasionally and standing and walking a total of two hours in an eight hour work day, and performing simple, repetitive tasks. At step four, the ALJ determined that Ms. Bivens is unable

to perform any of her past relevant work. At step five, the ALJ found that considering Ms. Bivens's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, thus she is not disabled for purposes of the Act from her alleged onset date through the date of the ALJ's decision.

## IV. DISCUSSION

Ms. Bivens raises three issues in her appeal that she claims constitute reversible error. First, she argues that the ALJ erred at step five because she did not incorporate Ms. Bivens's limitations with regard to concentration, persistence and pace into the hypothetical posed to the vocational expert. Second, she argues that the ALJ did not give proper weight to treating physicians Dr. Hunter and Dr. Lucas when determining her residual functional capacity. Third, she argues that the ALJ erred in her credibility determination in evaluating Ms. Bivens's testimony regarding the severity and limiting effects of her symptoms.

### A. The ALJ's hypothetical posed to the vocational expert was not in error.

Ms. Bivens argues that the ALJ failed to properly incorporate her finding of a moderate degree of limitation in concentration, persistence and pace into the hypothetical that was posed to vocational expert ("VE") James Lanier at the hearing. Therefore, Ms. Bivens contends the hypothetical does not satisfy the Seventh Circuit's requirement that the ALJ include all of the claimant's limitations, including deficiencies of concentration, persistence and pace, and as a result the VE's opinion was not based on a full understanding of Ms. Bivens's limitations. Based upon the ALJ's determination at step three that Ms. Bivens has moderate difficulties with regard to concentration, persistence or pace, Ms. Bivens asserts that the ALJ's limitation of her RFC to "simple, repetitive tasks" does not sufficiently encompass her limitations in this area.

As a general rule, the ALJ's hypothetical question to the VE "must include all limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). Specifically, with regard to limitations in the area of concentration, persistence and pace, the Seventh Circuit in *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) stated that in most instances, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." In *O'Connor-Spinner*, the court determined that it was unclear whether a hypothetical that limited the claimant to simple, repetitive tasks with simple instructions would cause the VE to eliminate positions that would pose significant barriers to an applicant's depression-related problems with concentration, persistence and pace. *Id.* In that case, however, the most restrictive hypothetical question posed by the ALJ did not include "a limitation on concentration, persistence and pace, although *later in his written decision the ALJ listed this limitation in assessing Ms. O'Connor-Spinner's residual functional capacity.*" *Id.* at 617-18 (emphasis added). It is true that a valid hypothetical question must ordinarily include all limitations that an ALJ finds for a claimant's RFC. *See Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009). However, courts have held that as long as the ALJ's RFC finding is supported by substantial evidence, and there is no inconsistency between the RFC and the hypothetical question, remand is not mandated under *O'Connor-Spinner*. *See Packham v. Astrue*, 762 F. Supp. 2d 1094, 1105 (N.D. Ill. 2011); *Herrold v. Astrue*, No. 2:10-CV-489-JD, 2012 WL 967354, at *27 (N.D. Ind., Mar. 21, 2012); *Evans v. Astrue*, No. 3:10- CV-432-JD, 2012 WL 951489, at *24 (N.D. Ind., Mar. 20, 2012); *Allbritten v. Astrue*, No. 2:11-CV-116, 2012 WL 243566, at *7 (N.D., Ind., Jan. 25, 2012).

In this case, Ms. Bivens argues that the ALJ found that she had moderate limitations in concentration, persistence and pace, thus this should have been included in the ALJ's hypothetical. However, this determination was made and addressed only in the ALJ's step three analysis, not in the ALJ's RFC determination, which is a separate analysis. Social Security Ruling 96-8p, which provides guidance on assessing residual functional capacity, states

> [t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are *not an RFC assessment* but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p (emphasis added); *see also* 20 C.F.R. § 404.1520a(d)(3). The ALJ also states this, almost verbatim, in her opinion, and states that her RFC determination, which is separate from the step three determination of whether Ms. Bivens's mental impairments meet or medically equal a listed impairment, reflects the degree of limitations found with regard to the overall severity of Ms. Bivens's mental impairments. R. at 16-17. This is not like the situation in *O'Connor-Spinner* in which the ALJ did include limitations in concentration, persistence and pace in the claimant's RFC, but not in the hypothetical presented to the VE. The ALJ's hypothetical question in this case was entirely consistent with her RFC finding. R. at 17; 57-58. Therefore, the Court rejects Ms. Bivens's challenge to the ALJ's step five determination on the basis that it does not adhere to the requirements of *O'Connor-Spinner*, and finds that the ALJ was not required to specifically include limitations of concentration, persistence and pace in the hypothetical posed to the VE.

**B.     The ALJ sufficiently articulated reasons for giving less weight to the treating physicians' opinions.**

Ms. Bivens's second argument is that the ALJ improperly did not give controlling weight to two of her treating physicians, primary care physician Dr. Hunter and psychologist Dr. Lucas, and erred by not considering a "checklist" of factors in determining what weight to give their opinions.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) well-supported by medical findings, and (2) consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). An ALJ must "minimally articulate" her reasons for discounting a treating source's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). This standard is "a very deferential standard that we have, in fact, deemed 'lax.'" *Id.* (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer controlling, but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

When considering what weight to give to a medical opinion, "[a]n ALJ must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Elder*, 529 F.3d at 415; *Hofslien*, 439 F.3d at 377); *see also* 20 C.F.R. § 1527(c).[4] The Seventh Circuit in *Larson* found that the ALJ merely stating that a treating physician's opinion was entitled to "some weight" was insufficient, and that the ALJ

---

[4] This section was cited in a previous version of the regulation under 20 C.F.R. § 404.1527(d)(2).

should have evaluated the physician's opinion under the factors articulated in 20 C.F.R. § 404.1527.  615 F.3d at 751.

In this case, Ms. Bivens argues that the ALJ erred because she failed to specifically address the "checklist" of factors in determining what weight to give to Dr. Hunter's and Dr. Lucas's opinions.  Ms. Bivens's argument seems to imply that an ALJ is required to go through each factor in 20 C.F.R. § 404.1527(c) and explicitly weigh each factor in her opinion. However, this goes against the principle that the ALJ is only required to "minimally articulate" her reason for discounting a treating physician's opinion, which the ALJ has done in this case.

The ALJ stated that she was not persuaded by Dr. Hunter's and Dr. Lucas's opinions that Ms. Bivens is significantly limited to the point where she is unable to work, which ALJ characterized as "overly pessimistic," based on her determination that these opinions were not supported by their own treatment records.  R. at 23.  "[C]onsistency and support for the physician's opinion" is one of the factors in the "checklist" that the ALJ is required to consider. *Larson*, 615 F.3d at 751.  The ALJ cites to the fact that many of Ms. Bivens's examinations by Dr. Hunter were relatively unremarkable, and his treatment notes did not indicate significant limitations that would preclude her from performing a reduced range of sedentary work.  R. at 19-20.  The ALJ also cited to treatment records from Dr. Lucas, which indicated that Lexapro was helping Ms. Bivens, and that she had started to sleep better and no longer had nightmares, but that nothing in those records indicated that Ms. Bivens could not perform simple, repetitive tasks.  R. at 21.  Furthermore, the ALJ also addressed the other factors in the "checklist" throughout her discussion of the RFC analysis, including the length, nature and extent of the treatment relationship, the frequency of examination, the areas of specialty, and the types of tests performed for both Dr. Hunter and Dr. Lucas.  R. at 18-21.

Ms. Bivens does not point the Court to any evidence in Dr. Hunter's or Dr. Lucas's treatment records that she claims the ALJ overlooked which would support their opinions that she is limited to the point where she is unable to work; only that the ALJ did not sufficiently articulate her reason for giving these opinions less weight.  The Court finds that the ALJ sufficiently articulated a basis for not giving these two treating physicians' opinions controlling weight, and must defer to the ALJ's conclusion.  *See Overman*, 546 F.3d at 462 (the court may not reweigh the evidence or substitute its judgment for that of the ALJ).  Therefore, the ALJ did not err in her consideration of the opinions of Ms. Bivens's treating physicians.

C.     **The ALJ's credibility determination was not patently erroneous.**

Next, Ms. Bivens argues the ALJ erred because she improperly discredited Ms. Bivens's testimony regarding the severity of her symptoms and her ability to sustain work.  Ms. Bivens testified that she could not alternately sit and stand for more than half of a work day before she would need to recline due to her pain, and that she was required to elevate her leg to relieve swelling.  In addition, she testified that mental problems such as flashbacks, difficulties with sleep, and fatigue would cause her to miss work or be unable to sustain work during an eight hour work day.  Ms. Bivens also alleged that her severe migraines render her incapable of performing full-time work.

The ALJ's credibility determination is a two-step process.  According to Social Security Ruling 96-7p, the ALJ must first determine whether there is a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged, and second, the ALJ must evaluate the intensity and persistence of the symptoms and determine the extent to which the symptoms limit the claimant's capacity for work.  Whenever the claimant's statements about the intensity, persistence, or functionally limiting effects of

symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. SSR 96-7p; 20 C.F.R. § 404.1529(c)(4). The factors that the ALJ must consider when assessing the credibility of a claimant's statements include the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate the symptoms; any measures other than treatment the claimant uses or has used to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3).

Because credibility is largely a factual determination, and because the ALJ is able to perceive witness testimony firsthand, the court will not upset credibility determinations so long as there is some support in the record and the ALJ is not "patently wrong." *Herron*, 19 F.3d at 335; *see Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (credibility findings are afforded "considerable deference" and can only be overturned if they are unreasonable or unsupported). "When assessing an ALJ's credibility determination, [the court does not] undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the court] merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder*, 529 F.3d at 413. Only when the ALJ's determination lacks any explanation or support will the court determine that her credibility determination is "patently wrong" and requires reversal. *Id.*

The ALJ found that Ms. Bivens's medically determinable impairments could reasonably be expected to cause her alleged symptoms. R. at 18. However, the ALJ found that Ms. Bivens's statements regarding the severity of her symptoms were not entirely credible due to a number of factors. First, the ALJ indicated that Ms. Bivens's inconsistent statements in the

record placed doubt on her credibility; such as her allegations that she could no longer sustain her employment as a college professor due to her impairments, but she also reported during her consultative examination in 2006 that she stopped working because her position was terminated due to a change in contractor, and that she was presently engaged in a job search. R. at 18, 22, 470. Additionally, the ALJ noted that Ms. Bivens reported to one of her physicians that she was working as a professor teaching nursing and history in July 2004, when she had previously reported that she stopped working in April 2004 because of her impairments.[5] R. at 19. While under SSR 96-8p an individual who can perform part-time work may still be considered disabled, the ALJ addressed these facts in the context of demonstrating the inconsistencies in Ms. Bivens's statements, not to demonstrate that she is capable of working part-time and is thus not disabled. R. at 22.

The ALJ also cites to medical records that are inconsistent with Ms. Bivens's subjective complaints about the limiting effects of her symptoms. As the Seventh Circuit has noted, "[a]lthough an ALJ may not ignore a claimant's subjective reports of pain simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *see also Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) ("While a hearing officer may not reject subjective complaints of pain solely because they are not fully supported by medical testimony, the officer may consider that as probative of the claimant's credibility."). The ALJ cited to the fact that Ms. Bivens stopped taking all medications in April 2006, suggesting that her symptoms were not as severe as alleged, and also noted that the results of Ms. Bivens's comprehensive medical examinations were relatively unremarkable. R. at 19, 20. As an

---

[5] Although not cited by the ALJ, the Court also notes that Ms. Bivens reported to her physician as late as June 2008 that she was working as a professor in a nursing school, which further supports the ALJ's findings of inconsistencies in Ms. Bivens's testimony regarding her ability to work. R. at 603.

example, the ALJ cited to the July 2006 psychological consultative examination in which Ms. Bivens demonstrated adequate concentration and attentiveness to task completion.  R. at 22.  Ms. Bivens argues that the ALJ ignored Dr. Hunter's finding that she needed to elevate her leg in a manner that would prevent the performance of full time work; however, the only place where this is stated in the record is in a March 2009 form and April 2009 letter completed by Dr. Hunter for purposes of her disability application, and she does not cite to any treatment records where this requirement is stated otherwise.  As stated above, the ALJ properly discounted the weight of Dr. Hunter's opinion because of a lack of consistency with his own treatment records, thus there was no error in the ALJ's disregard of this information.

Finally, Ms. Bivens argues the ALJ erroneously found that her activities of daily living were inconsistent with her symptom testimony, and that sporadic physical activity does not indicate that an individual is capable of full-time work.  While it is true that activities of daily living alone are not substantial evidence that would undermine a claimant's subjective complaints about pain or other symptoms, *Clifford*, 227 F.3d at 872, the ALJ does not solely cite to Ms. Bivens's daily activities as a basis for her credibility determination.  The ALJ's opinion indicates that she considered the record as a whole in making a credibility determination, and the Court finds that the ALJ provided adequate support and explanations for her conclusion.  *See Powers*, 207 F.3d at 435 (credibility determination upheld where it was based upon "a variety of facts and observations").  Thus, the Court finds that the ALJ's credibility determination is not patently wrong.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**.

Date: 03/29/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joseph W. Shull
jshull@joeshull.com

Thomas E. Kieper
OFFICE OF THE UNITED STATES ATTORNEY
tom.kieper@usdoj.gov